UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **BRYAN KANU** | ) | |
| | ) | Case No. 1:18-cv-38 |
| Plaintiff | ) | |
| | ) | |
| -vs- | ) | Honorable J. Black |
| | ) | Honorable M.J. Bowman |
| **SIEMENS PLM, et al.,** | ) | |
| | ) | |
| Defendants | ) | |
| | ) | **AMENDED COMPLAINT** |
| | ) | |
| | ) | |

## I. Parties to the action

**Plaintiff:**

Bryan Kanu
2663 Wendee Dr.
Apt. 1919
Cincinnati, Ohio, 45238
513-884-5504

**Defendants:**

**1.** SIEMENS PLM SOFTWARE
5800 Grantie Parkway
Plano, TX 75024

**2.** FELICIA BOYD
10824 Hope Street
Cypress, California 90630

**3.** KETTIL CEDERCREUTZ, PH.D
Northwestern University Pritzker School of Law
375 East Chicago Avenue
Chicago, Illinois 60611

## II. Subject Matter Jurisdiction

**42U.S.C. section 1981a**

**Title 28 U.S.C. § 1332(a)(1)**

Federal courts are courts of limited jurisdiction (limited power). Under 28 U.S.C. § 1332, federal courts may hear cases in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000. In that kind of case, called a diversity of citizenship case, no defendant may be a citizen of the same State as the plaintiff.

### (a) The Amount in Controversy

The amount the plaintiff claims the defendants owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because the plaintiff has suffered tremendous mental and emotional distress as a result of the negligence off Siemens PLM Software, as well as the damage to the plaintiff's young, professional reputation as a result of the negligence of Siemens PLM and the malicious, reckless behavior of Felicia Boyd. Kettil Cedercreutz, in his roles as Associate Provost and Director of the Professional Development Program at the University of Cincinnati failed to oversee the department staff who reported to him, and maliciously and intentionally neglected to perform his duty to protect a student from the malicious behavior of staff under his oversight.

## III. Statement of Claim

3

**Claim: Siemens PLM Software, Felicia Boyd and Kettil Cedercreutz -- who are citizens of another state -- were willfully and maliciously negligent, and the plaintiff suffered as a direct result of either their failure to act, or their actions.**

*(A) Duty:* As a paid co-op-student-employee at Siemens PLM Software, Siemens PLM software had an obligation to protect the plaintiff. The plaintiff received a copy of the general company guidelines when he first reported for work. These guidelines **"apply to all employees of the group of companies under ...Siemens PLM Software."** This means that Felicia Boyd, as an employee of Siemens PLM Software, **was subject to the general guidelines as set forth in the general company guidelines.**

Company guidelines state, **"It is the policy of the Company to conduct our business with integrity and in compliance with all applicable laws, rules and regulations. We make this commitment to our customers...to those government agencies that regulate the Company and to ourselves."** Further, the guidelines state that "**Each employee...working on behalf of or providing service to the Company, must work to comply with the policies set forth in the General Company Guidelines."**

Siemens PLM Software's general company guidelines also state that **"the Company takes compliance with laws, regulations, rules, Company policies and these guidelines seriously. Any violation of such may result in disciplinary action...these disciplinary actions may apply to an employees manager who...or fails to exercise appropriate supervision."**

The general company guidelines' section on fair dealing states **"Employees...should endeavor to deal fairly with employees...you should not take unfair advantage of anyone through manipulation, concealment, abuse of privileged information, misrepresentation of material facts, or any other unfair-dealing practices."**

The general company guidelines' section on anti-harassment states, **"Workplace harassment is <u>generally inappropriate conduct</u>, whether verbal, visual...or otherwise, <u>that has the purpose or effect</u> in creating a...hostile...work environment; unreasonably interfering with an individual's work performance; or <u>affecting an individual's employment opportunities</u>."**

Kettil Cedercreutz, as the Associate Provost and **Director of the Professional Development Program** at the University of Cincinnati had a duty to the plaintiff to oversee the division of professional practice, and therefore was subject to the University of Cincinnati's code of conduct which states that, **"all faculty, staff, students...university officers...are responsible for maintaining the highest ethical standards of this institution."** Further, as a Associate Provost and Director of Professional Development Program, Kettil Cedercreutz had a duty of **"bringing suspected violations of applicable standards, policies, laws or regulations to the attention of the appropriate office."**

*(B) Breach:*

Siemens PLM Software breached that duty by **failing to appropriately supervise its employees.**

Siemens PLM Software did allow its employees -- including but not limited to Felicia Boyd -- to knowingly fail to report suspected wrongdoing of its employees. Siemens PLM software did knowingly allow its employees to willfully violate compliance rules. **Siemens PLM Software failed to enforce its general company guidelines from June-September of the year 2016.**

**Siemens PLM Software did allow Felicia Boyd -- the manager of the SSP at Siemens PLM Software -- to conspire with employees of the University of Cincinnati to block the plaintiff's attempts to find other open positions within the company.**

**By failing to act and to discipline the manager of the Student Strategic program for her behavior, Siemens PLM Software allowed Felicia Boyd -- the manager of Siemens PLM Software's SSP -- to terminate the plaintiff's employment, after she had maliciously blocked the plaintiff's attempts to find another position in the company.**

Further, Siemens PLM Software's failure to act and negligent oversight of the Student Strategic Program **allowed for the denial of the plaintiff's request to return to Siemens PLM Software by the manager of the SSP (Felicia Boyd), after she had maliciously interfered with the plaintiffs ability to find another position within the company.**

By failing to enforce the general company guidelines, Siemens PLM Software failed the plaintiff in their stated commitment to **"conduct [their] business with integrity and in compliance with all applicable laws, rules and regulations."**

Plaintiff states that he spoke with many different Siemens PLM Software employees -- including Holly Sterling, Tom Tabling, ,Mary Otte and Tony Rice -- about his situation, including but not limited to one or more senior vice presidents (such as Jim Rusk), and therefore **Siemens PLM Software knew at the time that there was** -- at the very least -- **suspected wrongdoing, which should have been reported** and appropriately handled **as outlined in the general company guidelines.**

Siemens PLM Software -- by failing to enforce its general company guidelines -- **allowed Felicia Boyd and other employees to take unfair advantage of the plaintiff, and allowed Felicia Boyd -- the manager of the Student Strategic Program -- to manipulate the plaintiff so that he would feel that leaving the company is the only way he will be able to find the opportunity he desires.**

Siemens PLM Software knowingly failed to act when they were aware of the manager of the Student Strategic Program's (Felicia Boyd) interference with the plaintiff's employment opportunities within the company, violating their own anti-harassment policy. Plaintiff states that he was informed by Mary Otte on September 1, 2016 that the "University Relations team, **headed by Felicia (Boyd),** has, as you know, decided to work on international placements **only with students that are enrolled in the university's International Co-op Program.**"

Kettil Cedercreutz **breached his duty** to the plaintiff **on December 17, 2017,** when he maliciously told the plaintiff that the appropriate person to contact about suspected violations of the University of Cincinnati's Code of Conduct was Todd Foley.

***(C) Causation:***

Due to the breach of duty by Siemens PLM Software, **the plaintiff suffered employment pay discrimination** when he moved on to another company, **due to the malicious advice to remove his Bachelors Degree from Xavier University that was given while the plaintiff was an employee at Siemens PLM Software.**

The plaintiff, because his employment opportunities were being affected by the manager of the Student Strategic Program **(Felicia Boyd)**, suffered from depression because he felt that people were directly trying to restrict his movements and unfairly deny him opportunities that were said to be open.

As a proximate result of the negligence of Siemens PLM Software, plaintiff suffered tremendous, irreparable damage to his young, professional reputation as a result of the breach of duty by Siemens PLM Software; an undisputed world leader in engineering technology.

Plaintiff states he lost out on a rare opportunity to begin his career as a Software Engineer with Siemens PLM Software as a direct result of the hostile work environment that he found himself in, and the interference with his employment opportunities within the company.

Plaintiff states that his reputation with the company was irreparably damaged simply because he attempted to reach out to other Siemens PLM Software employees about finding open employment opportunities within the company.

As a result of the failure to protect a co-op student employee by Siemens PLM Software, Felicia Boyd, Chris Cooper (University of Cincinnati employee) and Gayle Elliott (University of Cincinnati employee) were able to successfully interfere with the

plaintiffs educational and personal plans, and block him from employment simply because they did not like him.

Further, the breach of duty by Siemens PLM Software resulted in the the malicious obstruction of the plaintiff's ability to report University of Cincinnati employees Chris Cooper and Gayle Elliott for their violations of the University of Cincinnati's code of conduct. Plaintiff states that he contacted Associate Provost of the University of Cincinnati and Director of the Professional Practice to ask about who the appropriate person would be to file a complaint against employees of the division of professional practice; an inquiry that **Kettil Cedercreutz answered with a lie, maliciously breaching his duty as Associate Provost of the University of Cincinnati and Division of Professional Practice.** The plaintiff, because he had attempted to report the inappropriate behavior of University of Cincinnati employees working in concert with Felicia Boyd of Siemens PLM Software, was told on December 17, 2016 by Kettil Cedercreutz that the person to speak with about his complaint was Todd Foley. Siemens PLM Software's negligent oversight resulted in the plaintiff's continued harassment by University of Cincinnati employees.

As a direct result of Kettil Cedercreutz maliciously telling the plaintiff that the appropriate person to file a complaint about violations of the University of Cincinnati's Code of Conduct, the plaintiff was subjected to further harassment from University of Cincinnati employees. As a direct result of Kettil Cedercreutz's negligent, malicious actions, the plaintiff's mental suffering and educational experience was affected. Kettil Cedercreutz's misconduct and breach of duty caused the plaintiff to suffer further abuse

Case: 1:18-cv-00038-TSB-SKB Doc #: 6 Filed: 02/05/18 Page: 9 of 12 PAGEID #: 594

9

and manipulation from Chris Cooper, Todd Foley and Gayle Elliott of the University of Cincinnati's Division of Professional Practice.

Kettil Cedercreutz's negligence resulted in the intentional sabotage of the plaintiffs resume, directly resulting in the plaintiff's loss of employment opportunities and loss of future wages and earning potential.

### *(D) Damages:*

The plaintiff states that no offers of full-time employment have been made to the plaintiff by Siemens PLM Software despite the fact that the plaintiff is scheduled to complete his Bachelor's degree in May of 2018, because he left the Student Strategic Program. Plaintiff states that other students who did not leave Student Strategic Program were made offers of full-time employment. Future wages with Siemens PLM Software have been lost as well as the plaintiffs earning capacity as a direct result of this breach of contract by Siemens PLM Software.

Plaintiff states that he has lost out on countless engineering-related employment opportunities outside of Siemens PLM Software as a direct result of Siemens PLM Software -- by and through Felicia Boyd's -- breach of duty. Plaintiff states he applied to for open positions to at least twenty different companies, only to receive rejection after rejection due to the removal of his bachelor's degree at the advice of Chris Cooper, who Kettil Cedercreutz failed to oversee in his role as director of the division of professional practice. The plaintiff also states that because he has completed the co-op requirements of his degree, the breach of duty by Siemens PLM Software resulted in the altered life path of the plaintiff because of the manipulation of Siemens PLM Software's employees --

including but not limited to Felicia Boyd -- and the failure of Siemens employees who were knowledgeable of the situation to report those suspected interferences with the plaintiff's employment opportunities.

The plaintiff states that the mental suffering he has endured as a direct result of the hostile work environment, and his forever lost, interfered with employment opportunities because of his membership in Siemens PLM Software's Student Strategic Program has been significant.

The plaintiff, as a direct result of the breach of duties by Siemens PLM Software, Felicia Boyd and Kettil Cedercreutz, has also lost out on future wages not related to software engineering, as the plaintiff -- working with his sporting agent -- had been planning to find and sign a contract of employment with a sports club in the same city where he would have been living during the co-op semesters that he would have been working on the software-engineering related work.

As sporting contracts can be highly lucrative, the damages suffered by the plaintiff in regards to the lost future wages of the plaintiffs sports plans are also great due to the fact that athletes are perceived to have a "prime", and the earning potential of an athlete decreases with the athlete's age. Siemens PLM Software's negligent oversight of their Student Strategic Program has resulted in malicious interference of plaintiff's life outside of software engineering, which has also put the plaintiff through unnecessary, harmful mental suffering and bodily stress.

Further, as the plaintiff states that this negligent oversight has resulted in his inability to move freely as an athlete, it can be concluded that the malicious interference

of the plaintiffs ability to exercise while playing his sport at the level he desires has resulted in future physical/bodily damages that will result directly from the inability of the plaintiff to exercise at the level required for his sport at the professional level. As cardiovascular health is an essential part of being a healthy human being, there is no doubting that the malicious interference of employment opportunities has directly impacted the future health of the plaintiff.

The plaintiff states that had his employment opportunities not been interfered with, he would have been free to work with his sporting agent to find a sports club where he could perform the duties of a professional sports person, which the plaintiff states would have brought him a peace of mind. As the interference of the plaintiffs employment opportunities resulted in a hostile work environment, it can be said that the mental suffering aspect of the plaintiff's damages also include the knowledge that not only was his educational experience being affected, but also his career plans athletically -- plans that Siemens PLM Software and Felicia Boyd had no right to interfere with.

Kettil Cedercreutz had no right to obstruct the plaintiff from reporting University of Cincinnati employees directly under his control for violations of the University of Cincinnati's Code of Conduct, and can be said to have added undue mental damages to the plaintiff simply by maliciously neglecting to perform his duty as Associate Provost and Director of the Division of Professional Practice.

**IV. Previous/Other Related Lawsuits**

**Case No. 2018-00042**     Bryan Kanu vs State of Ohio

**Case No. 1:18-cv-37**     Bryan Kanu vs Siemens PLM Software, et al.,

## V. Relief

**Plaintiff demands judgment** against Siemens PLM Software, or against Felicia Boyd, or against Kettil Cedercreutz, or against all of these defendants **in the sum of $504,000,000** dollars in compensatory damages and **$18,000,000** in punitive damages, as well as a **full-time position** with the title of **Software Engineer** with Siemens PLM **located in Milford, Ohio** upon completion of the plaintiffs studies at the University of Cincinnati with a yearly salary of **$63,000**, a **$9,000 signing bonus**, an **annual bonus of $9,000, full medical benefits, paid time off, paid paternity leave, the ability to work from home occasionally, workspace close to a window, educational reimbursement, and investment and stock options**. Plaintiff also demands reimbursement of the plaintiff's costs for any court costs and fees resulting from the filing of this formal complaint in the United States District Court for the Southern District of Ohio Western Division.

Respectfully submitted, under penalty of perjury. Executed on this 5th day, of February, 2018.

s/ Bryan Kanu
2663 Wendee Dr. Apt. 1919
Cincinnati, Ohio 45238
bryan.kanu18@gmail.com

### CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing document was served upon defendants attorneys by email on this 5th day of February, 2018.

*Bryan Kanu*
*Plaintiff*