**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

BRYAN KANU,

        Plaintiff,

   v.

SIEMENS PLM, et al.,

        Defendants.

Case No. 1:18-cv-38

Black, J.
Bowman, M.J.

**SUPPLEMENTAL REPORT AND RECOMMENDATION**

On January 19, 2018, Plaintiff filed two motions seeking leave to file two separate complaints in this Court *in forma pauperis*, or without payment of the requisite filing fee that is ordinarily required to file a case in this court.[1] (Doc. 1). On January 29, 2018, the undersigned conditionally granted Plaintiff leave to initiate both cases *in forma pauperis*, but simultaneously issued an order requiring Plaintiff to "show cause" why his *in forma pauperis* status should not be revoked and denied. Additionally, the undersigned filed a Report and Recommendation in each of the two cases recommending that the initial complaints be dismissed, without prejudice to refile a first amended complaint to correct the glaring deficiencies of the related complaints.

On February 5, 2018, Plaintiff filed responses to the "show cause" orders issued in each of his two cases, as well as amended complaints in both cases that purport to cure the fatal deficiencies of the initial complaints. Because Plaintiff does not qualify for *in forma pauperis* status, I now recommend that the prior conditional grant of such

---

[1] A second case was opened as *Kanu v. Seimens PLM Software*, Case No. 1:18-cv-37.

status be revoked, and that Plaintiff be required to pay the requisite $400 filing fee in order to proceed in this Court.

Irrespective of his filing status, the undersigned continues to find Plaintiff's complaint to be fatally deficient because it fails to state any claim against any Defendant, and therefore remains subject to dismissal under 28 U.S.C. § 1915(e)(2)(B) (to the extent that Plaintiff is permitted to proceed *in forma pauperis*) or under *Apple v. Glenn*. As Plaintiff has already been granted one opportunity to amend his complaint to cure the obvious and fatal deficiencies, he should not be permitted to further amend at this time.

### I.     Revocation of *In Forma Pauperis* Status

Having reviewed Plaintiff's response to the "show cause" order, the undersigned now recommends that the prior conditional grant of *in forma pauperis* status be revoked, and that Plaintiff be directed to pay the full $400.00 filing fee. As noted in this Court's show cause order, Plaintiff's initial application to proceed in *forma pauperis* indicates that he currently has approximately $8,100.00 in savings, checking, or a related account – a sum that far exceeds the filing fee for this action. In his response to the Order requiring him to show cause why he should not be required to pay the filing fee, Plaintiff states that "he pays the monthly interest on each of his 6 private Sallie Mae [student] loans in order to reduce the amount he has to pay upon graduation." (Doc. 5 at 1).[2] Plaintiff further argues that he has a monthly cable bill and weekly grocery expenses, as well as a fluctuating electric bill. He states that he is "doing the best he can to get

---

[2]Student loans are typically placed in a deferred payment status during the period of time an individual remains a full-time student. Aside from Plaintiff's preference to reduce his total student loan liability upon graduation, there is no indication that he is in default, or would be placed in default if he failed to make a monthly interest payment. Even if the $144 monthly interest payments are mandatory, however, they do not suffice to qualify Plaintiff for waiver of the filing fee in this case.

2

through college while being financially responsible as an independent student," and therefore seeks a waiver of the filing fees in his two cases. He compares the combined total of $800 in filing fees for both cases to the "equivalent of one month's rent, at least two weeks of groceries, and one month of high speed internet."

Plaintiff's desire to maintain his financial independence and/or to preserve his more than eight thousand dollars in savings is not a sufficient basis to grant him pauper status. Proceeding *in forma pauperis* is a privilege, not an unqualified right. *See Shobe v. People of the State of California,* 362 F.2d 545, 546 (9th Cir.1966). Therefore, a district court does not abuse its discretion when it denies an application to proceed *in forma pauperis* where the applicant appears to have sufficient assets with which to pay the requisite filing fee. *See, e.g., Ibrahim v. Food Lion, Inc.*, 149 F.3d 1183, 1998 WL 381326 (6th Cir. June 26, 1998) (Table, affirming discretionary denial of *in forma pauperis* request where applicant earned $165 per week and had $400 in bank account, in addition to automobile valued at less than $4,000); *accord Brogue v. Fort Knox Fed. Credit Union,* No. 96–1896, 114 F.3d 1186, 1997 WL 242032, at *1 (6th Cir. May 8, 1997) (Table).

**II. General Screening Authority**

**A. Screening Under 28 U.S.C. § 1915**

To the extent that this Court has granted conditional approval of Plaintiff's *in forma pauperis* motion, notwithstanding that such grant may be revoked in the future, his complaint is now before the Court for a *sua sponte* review to determine whether the complaint, or any portion of it, should be dismissed because it is frivolous, malicious,

3

fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B).

Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if satisfied that the action is frivolous or malicious. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *see also* 28 U.S.C. § 1915(e)(2)(B)(i). A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v. Williams*, 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke*, 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton,* 504 U.S. at 32; *Lawler,* 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

Congress has also authorized the *sua sponte* dismissal of complaints which fail to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915 (e)(2)(B)(ii). Although a plaintiff's *pro se* complaint must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers," the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*per curiam*) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotation omitted)). The complaint "must contain sufficient factual

4

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010)("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915(e)(2)(B)(ii) and 1915A(b)(1)).

Plaintiff's complaint identifies three Defendants: (1) Seimens PLM Software, a company that Plaintiff alleges is a citizen of Plano, Texas; (2) Felicia Boyd, an alleged employee of Seimens PLM Softward who allegedly resides in California; and (3) Kettil Cedercreutz, PhD, an individual whose address is presently listed to be at Northwestern University Pritzker School of Law, but who is alleged to have been negligent in his roles as Associate Provost and Director of the Professional Development Program at the University of Cincinnati. Based upon the alleged complete diversity of citizenship between Plaintiff and all three Defendants, Plaintiff invokes the diversity jurisdiction of this federal court under 28 U.S.C. § 1332.

Plaintiff generally alleges that all three Defendants are liable to him under state law claims of negligence. In order to recover on a negligence claim, Plaintiff must prove that each of the named Defendants owed him a duty of care under Ohio law, that the Defendants breached that duty, and that the breach of the duty proximately caused the Plaintiff's injury. *Leizerman v. Kanous,* 181 Ohio App.3d 579, 910 N.E.2d 26, 28 (Ohio App. 6 Dist.2009) (citing *Eisenhuth v. Moneyhon,* 161 Ohio St. 367, 119 N.E.2d 440 (1954)). A duty may be established by common law, legislative enactment, or by the particular facts and circumstances of the case. *Id.*

The precise bases for liability are difficult to determine. However, even construing the allegations liberally, the complaint does not set forth the most basic factual support for a claim that any of the three Defendants (1) owed a specific legal duty to Plaintiff under Ohio law; (2) violated that duty; and/or (3) that the alleged violation of duty proximately caused Plaintiff's injuries. The Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 129 S.Ct. at 1949. Plaintiff's failure to provide factual detail to support any claim of negligence against any Defendant requires the undersigned to recommend dismissal of the complaint for failure to state any claim.

In defining the duty owed by Defendant Siemans, Plaintiff alleges that Defendant Siemens had "an obligation to protect the plaintiff" during a temporary period of paid employment, based upon company policies applicable to Defendant Felicia Boyd. (Doc. 6 at 3). Plaintiff refers to company "guidelines" that state that it is "the policy of the Company to conduct our business with integrity and in compliance with all applicable laws, rules and regulations." (Doc. 6 at 3). He refers to another corporate guideline that defines workplace harassment as "generally inappropriate conduct, whether verbal, visual…or otherwise, that has the purpose or effect in creating a …hostile .work environment; unreasonably interfering with an individual's work performance; or affecting an individual's employment opportunities." (Doc. 6 at 4). Plaintiff alleges that Seimens violated its duty to Plaintiff when it failed to supervise Felicia Boyd, (Doc. 6 at 4), and failed to report her alleged wrongdoing, but he never clearly identifies precisely what Ms. Boyd allegedly did that harmed Plaintiff, when/how he notified the corporate

6

Defendant, or how Defendant Siemans breached a legal duty owed to Plaintiff after Plaintiff notified the corporation. (See Doc. 6 at 5).

Plaintiff generally alleges that Seimens "allow[ed]" Ms. Boyd to "conspire with employees of the University of Cincinnati to block the plaintiff's attempts to find other open positions within the company," and "allowed" her to "terminate the plaintiff's employment, after she had maliciously blocked the plaintiff's attempts to find another position in the company." (*Id.*) Plaintiff also alleges that the corporate Defendant "allowed Felicia Boyd and other [unidentified] employees to take unfair advantage of the plaintiff, and allowed Felicia Boyd….to manipulate the plaintiff so that he would feel that leaving the company is the only way he will be able to find the opportunity he desires." (Doc. 6 at 6). Plaintiff alleges that the corporation's "negligent oversight" of Ms. Boyd and of its "Student Strategic Program allowed for the denial of the plaintiff's request to return to Siemens PLM Software by the manager of the SSP (Felicia Boyd), after she had maliciously interfered with the plaintiff[']s ability to find another position within the company." (*Id.* at 5). Plaintiff generally alleges that he spoke with multiple Siemens employees (but does not identify their positions in the company) such that the company "knew at the time that there was – at the very least – suspected wrongdoing, which should have been reported and appropriately handled as outlined in the general company guidelines." (Doc. 6 at 6).

Plaintiff's allegations against the corporate Defendant are too conclusory to state any "negligence" claim against that Defendant. Plaintiff's allegation that the company knew of some type of undefined "suspected wrongdoing" is not sufficient to establish a legal duty under Ohio law, much less breach of that duty. It is worth noting that Plaintiff

7

has deliberately and carefully separated his "negligence" claims from any employment discrimination claims that form the basis of his complaint in closely related Case No. 1:18-cv-37.

> Negligent hiring and retention claims under Ohio law require proof of five elements: (1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee was the proximate cause of the plaintiff's injuries. *Hout v. City of Mansfield*, 550 F. Supp.2d 701, 745 (N.D. Ohio 2008) (citing *Linder v. Am. Nat'l Ins. Co.,* 798 N.E.2d 1190, 1197 (Ohio App. 1st Dist. 2003)). A plaintiff must be able to establish a tort claim against the individual employee in order to maintain an action for negligent supervision or retention against the employer. *Minnich v. Cooper Farms, Inc.*, 39 Fed.Appx. 289, 296 (6th Cir. 2002) (citing *Myers v. Goodwill Indus. of Akron, Inc.*, 721 N.E.2d 130, 134 (Ohio App. 9th Dist. 1998); *Campbell v. Colley*, 680 N.E.2d 201, 206 (Ohio App. 4th Dist. 1996)).

*Souders v. Mount St. Joseph University*, 2016 WL 8671966, at *16 (S.D.Ohio, 2016).

Here, even assuming that Plaintiff's conclusory allegations against Ms. Boyd were sufficient to establish a tort against her under Ohio law, Plaintiff's allegations would still be insufficient to establish that Siemens had actual or constructive knowledge of Ms. Boyd's alleged breach of duty to Plaintiff, and failed to act in a reasonable manner. For that matter, Plaintiff also has failed to sufficiently allege (other than in the most conclusory fashion) that any alleged breach of a legal duty owed to Plaintiff by Seimens was the proximate cause of his injuries.

Plaintiff's allegations similarly fail to state any claim against Defendant Cedercreutz. He alleges that Defendant owed Plaintiff a duty because Mr. Cedercreutz is the Director of the Professional Development Program, a position subject to a code of conduct requiring the "highest ethical standards," with a separate obligation to bring

"suspected violations" of those standards "to the attention of the appropriate office." (Doc. 6 at 4). Plaintiff alleges that Mr. Cedercreutz "breached his duty to the plaintiff on December 17, 2017, when he maliciously told the plaintiff that the appropriate person to contact about suspected violations of the University of Cincinnati's Code of Conduct was Todd Foley." (Doc. 6 at 6).

Plaintiff also alleges that Provost Cedercreutz "failed to oversee" University of Cincinnati employee Chris Cooper, who Plaintiff alleges provided Plaintiff with bad advice, on an unknown date, about removing a reference on Plaintiff's job application or resume to a prior bachelor's degree. (Doc. 6 at 9). Plaintiff alleges that his injuries include "employment pay discrimination when he moved on to another [unidentified] company, due to the malicious advice to remove" a reference to a prior degree from Xavier University during the time Plaintiff was employed at Siemens.[3] (Doc. 6 at 7).

With respect to injuries, Plaintiff alleges that he suffered "tremendous, irreparable damage to his young, professional reputation" including the loss of the chance to begin his professional career at Siemens. He also became depressed "because he felt that people were directly trying to restrict his movements and unfairly deny him opportunities." (Doc. 6 at 7). He alleges that his reputation "was irreparably damaged simply because he attempted to reach out to other Siemens PLM Software employees about finding open employment opportunities within the company." (*Id.*).

Plaintiff further alleges that two University of Cincinnati employees who are not named Defendants (Elliott and Cooper) interfered with his "educational and personal

---

[3]Although Plaintiff does not identify additional details in this case, he alleges in Case No. 1:18-cv-37 that University of Cincinnati employee Cooper (not a Defendant herein) gave him that advice on or around December 2016 when Plaintiff was applying for a co-op position with Cincinnati Children's Hospital Medical Center.

9

plans" and "block[ed] him from employment simply because they did not like him." (Doc. 6 at 7-8). Plaintiff alleges that Defendant Seimens breached a duty by obstructing Plaintiff's ability to report the *University* employees for their violation of the *University*'s "code of conduct." (Doc. 6 at 8). The undersigned perceives no factual basis for this allegation or legal theory for such claim. Plaintiff reiterates that he contacted Defendant Provost Cedercreutz to ask about the appropriate person with whom Plaintiff might file a complaint, but that Mr. Cedercreutz "answered with a lie" by incorrectly identifying Todd Foley as the person with whom he could file a complaint. (*Id.* at 8). Plaintiff summarily asserts that the provost's "misconduct and breach of duty caused the plaintiff to suffer further abuse and manipulation from Chris Cooper, Todd Foley and Gayle Elliott of the University of Cincinnati's Division of Professional Practice." (Doc. 6 at 8-9).

Plaintiff alleges that Defendant Siemens' negligence and "breach of contract" resulted in Plaintiff leaving the Student Strategic Program and not receiving any offer of full-time employment with Siemens, as well as his receipt of rejection letters from "countless" other "engineering-related employment opportunities." (Doc. 6 at 9). He alleges that the conduct of Siemens resulted in an "altered life path" (*id.*), and in "mental suffering…as a direct result of [a] hostile work environment." (*id.* at 10). Plaintiff's complaint goes on to allege that in addition to the lost engineering-related employment, Plaintiff has lost future employment as a professional athlete in an unidentified sport, which has led to "harmful mental suffering and bodily stress," and his "inability to move freely as an athlete" and/or to "exercise at the level required for his sport at the professional level." (Doc. 6 at 10-11).

Plaintiff seeks monetary damages against all three Defendants in the amount of $504,000.00 in compensatory damages, and $18,000.00 in punitive damages, "as well as a full-time position with the title of Software Engineer with Siemens PLM located in Milford, Ohio upon completion of the plaintiff['s] studies at the University of Cincinnati with a yearly salary of $63,000, a $9,000 signing bonus, an annual bonus of $9,000, full medical benefits, paid time off, paid paternity leave, the ability to work from home occasionally, workspace close to a window, educational reimbursement, and investment and stock options." (Doc. 6 at 12).

Even liberally construed, the undersigned finds Plaintiff's allegations insufficient to establish that Defendants Siemens or Cedercreutz owed Plaintiff any legally cognizable duty under Ohio law, that either Defendant violated that duty, and/or that such violation was the proximate cause of any of Plaintiff's alleged injuries. The allegations against Defendant Boyd come slightly closer to making out a claim for negligence. However, the basis of the legal duty owed to Plaintiff by Defendant Boyd and specifics of the alleged negligence under Ohio law remain too vague and conclusory to state any claim. Plaintiff simply fails to connect the dots, in any plausible way, that whatever duty Ms. Boyd breached or whatever actions she took with respect during his employment proximately led to the damages that he is claiming.

Despite his conclusory reference to a "breach of contract," Plaintiff does not rely on any contract of employment, and presumably, was employed at will as a Co-op student. In addition, while it is inferred that Ms. Boyd was his supervisor, his claim does not arise under Title VII or Ohio's state employment discrimination laws, nor could it,

11

since an individual supervisor is not an employer. Moreover, he has filed a separate complaint against Siemens as his employer, see Case No. 1:18-cv-37.

### III. Alternative Screening Under *Apple v. Glenn*

In *Apple v. Glenn,* 183 F.3d 477, 479 (6th Cir.1999), the Sixth Circuit affirmed the district court's authority to *sua sponte* dismiss a non-prisoner *pro se* complaint for lack of jurisdiction "at any time" where the filing fee has been made, "when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open for discussion." *Id.* at 479. In the case presented, Plaintiff's complaint fails to comply with Rule 8 in a manner that makes the allegations so attenuated as to fail to state a claim that can be reasonably deciphered by the court or any defendant. The same reasons stated for dismissal under 28 U.S.C. § 1915(e) apply equally if the Court revokes Plaintiff's conditional *in forma pauperis* status and instead reviews the complaint *sua sponte* under *Apple v. Glenn*. *Accord Shabazz v. Xerox,* 2014 WL 4181600; *Saunders v. Obama*, 2012 WL 1030473, at *9 (S.D. Ohio, 2012).

### III. Conclusion and Recommendation:

For the reasons stated,

1. Plaintiff's *in forma pauperis* status should be REVOKED based upon a lack of indigency, and he should be required to immediately pay the full $400.00 filing fee for this case. He should also be denied leave to appeal i*n forma pauperis*;

2. Plaintiff's complaint should be dismissed *sua sponte* with prejudice for failure to state any claim under Title VII or other federal law, either under 28 U.S.C. §

1915(e) if Plaintiff is permitted to continue to proceed *in forma pauperis*, or alternatively, under *Apple v. Glenn*.

            *s/Stephanie K. Bowman*
            Stephanie K. Bowman
            United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

BRYAN KANU,

      Plaintiff,

  v.

SIEMENS PLM, et al.,

      Defendants.

Case No. 1:18-cv-38

Black, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).